1  **EDWIN C. SCHREIBER, SBN 41066**
   **ERIC A. SCHREIBER, SBN 194851**
2  **SCHREIBER & SCHREIBER, INC.**
   16501 Ventura Boulevard Suite 401
3  Encino, California 91436-2068
   Tel: (818) 789-2577
4  Fax: (818) 789-3391

5
   Attorneys for Plaintiff, Barbara Salmonson
6

7                **UNITED STATES DISTRICT COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9

10

11 BARBARA SALMONSON,                  ) **Case No. 2:11-cv-02293-SVW(SSx)**
   individually and on behalf of a     )
12 class of persons similarly situated ) **(Removed from California State**
                                       ) **Court, Case No. BC 455000)**
13          Plaintiff,                 )
                                       ) **CLASS ACTION**
14     vs.                             )
                                       ) **PLAINTIFF BARBARA**
15 BED BATH & BEYOND, INC., a          ) **SALMONSON'S UNOPPOSED**
   Delaware Corporation; BED           ) **MOTION FOR PRELIMINARY**
16 BATH & BEYOND OF                     ) **APPROVAL OF CLASS ACTION**
   CALIFORNIA LIMITED                  ) **SETTLEMENT**
17 LIABILITY COMPANY, a                )
   Delaware Limited Liability          ) **Action Filed:     February 14, 2011**
18 Company, and DOES 1 to 100,         ) **Action Removed: March 17, 2011**
   Inclusive,                          )
19                                     ) **Hearing:    April 23, 2012**
            Defendants.                ) **Time:       1:30 p.m.**
20
                                         **The Honorable Stephen V. Wilson**
21 ─────────────────────────────

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION                                                                1

II. THE SONG-BEVERLY CREDIT CARD ACT
AND THE CLASS                                                                  1

III. A SUMMARY OF THE PROPOSED SETTLEMENT                                      2

IV. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD
BE PRELIMINARILY APPROVED                                                      6

    A. Nature and Strength of the Case                                    6

    B. The Risk and Expense of Continued Litigation                      9

    C. Discovery                                                         10

    D. Class Recovery                                                    11

    E. Experience of Counsel                                             11

    F. Government Participation                                          12

    G. The Settlement was Reached at Arm's-Length,
With the Aid of an Experienced Mediator and  is Well in
Line with Other Recent Settlements Under the Act                               12

    H. The Class Representative Incentive Award,
Subject to This Court's Approval is Fair                                       16

I. An Award of $199,000 in Attorney Fees and up to
   $10,000 in Costs to Class Counsel is Fair,
   Reasonable and the Product of Arms-Length
   Negotiations                                                17

V. THE SETTLEMENT CLASS SHOULD BE
   PROVISIONALLY CERTIFIED, THE FORM
   AND METHOD OF CLASS NOTICE SHOULD BE
   APPROVED AND A FINAL APPROVAL HEARING
   SHOULD BE SCHEDULED                                        19

   A. The Requirements of Rule 23(a) are Met                 19

   B. The Requirements of Rule 23(b)(3) Are Met              21

   C. The Court Should Approve the Form and Method of
      Service of Class Notice                                22

   D. The Court Should Set Deadlines for Notice,
      Submission of Requests for Exclusion, Claim Forms,
      Objections, and Notices of Intention to Appear and
      Schedule a Final Approval Hearing                      24

VI. CONCLUSION                                               24

# TABLE OF AUTHORITIES

**Federal Cases**

*Colesberry v. Ruiz Food Products, Inc.* 2006 WL 1875444
*7 (E.D. Cal. June 30, 2006)                                    23

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269,
322 (W.D. Tx. 2007)                                            17-18

*Eisen v. Carlisle & Jacqueline* 417 U.S. 156,
175-76 (1974)                                                   23

*Garner v. State Farm Mutual Auto Insurance Co.*
2010 WL 1687832, *8 (N.D. Cal. Apr. 22, 2010                    9

*Grunin v. International House of Pancakes* 513 F.2d 114,
122 (8th Cir. 1975)                                             23

*Hanlon v. Chrysler Corp.* 150 F.3f 1011,
1019 (9h Cir. 1998)                                            20

*In re Corrugated Container Antitrust Litigation,*
643 F.2d 195                                                  10-11

*In re Immune Response Securities Litigation* 497 F.Supp.2d
1166, 1169-70 9S.D. Cal. 2007)                                6, 9

*In re GMC Pick-Up Truck Fuel Tank Products Liability
Litigation* 55 F.3d 768, 784 (3rd Cir. 1995)                  22

*In re Omnivision Technologies, Inc.* 559 F.Supp.2d 1036,
1043 (N.D. Cal. 2008)                                    12

*Ingram v. The Coca-Cola Company* 200 F.R.D. 685,
694 (N.D. Ga. 2001)                                     16

*Jones v. E\*Trade Mortgage Corp.* 2006 WL 581257
\*2 (S.D. Cal. Feb. 17, 2006)                           21

*McPhail v. First Command Financial Planning, Inc.,*
247 F.R.D. 598, 610 (S.D. Cal. 2007                     20

*Rodriguez v. West Publishing Corp.* 563 F.3d 948       16

*Stanton v. Boeing* 327 F.3d 938, 957 (9th Cir. 2003)   20

*Valentino v. Carter- Wallace, Inc.* 97 F.3d 1227,
1234 (9th Cir. 1996)                                    22

*Zhu v. Fujitsu Group 401(K) Plan,* 2004 WL 3252573
at \*5 (N.D. Cal. March 3, 2004)                        19

**California Cases**

*7-Eleven Owners for Fair Franchising vs. Southland
Corporation* (2000) 85 Cal. App.4th 1135                    9-10

*Dunk v. Ford Motor Company* (1996) 48 Cal. App.4th 1794    12

*Pineda v. Williams-Sonoma Stores, Inc.* (2011)             1
51 Cal.4th 524

*TJX Companies, Inc v. Superior Court* (2008)
163 Cal. App.4th 80                                         7

**Federal Statutes**

<u>F.R.C.P.</u> Rule 23                                     *Passim.*

**State Stautes**

<u>California Civil Code</u> § 1747.08                      1

## I.    INTRODUCTION

This action is a single cause of action lawsuit under a California statute, the Song-Beverly Credit Card Act. Plaintiff Lisa Elan filed a class action February 14, 2011, seeking statutory civil penalties against Defendants Bed Bath & Beyond, Inc., and Bed Bath & Beyond of California Limited Liability Company (collectively "BBB"), based upon a claim that BBB requested and recorded Plaintiff's ZIP code in connection with a credit card purchase she made from a California BBB store. Plaintiff Barbara Salmonson substituted in as named plaintiff on July 6, 2011. BBB has denied all liability.

In the course and scope of the litigation, the parties initially attended a mediation before the Honorable Dickran Tevrizian on August 10, 2011. While this mediation did not prove immediately successful, the parties continued to negotiate. In January 2012, the Court held a status conference with Plaintiff and BBB's counsel, along with counsel for six other related matters.[1] After the status conference, by order of the Court, Plaintiff's counsel (Schreiber & Schreiber, Inc.) was appointed interim lead counsel and all other matters were stayed. Shortly thereafter, on February 14, 2012, the Plaintiff and BBB resumed their mediation with the Honorable Judge Tevrizian and were able to finally resolve the matter. Plaintiff now presents the settlement to the Court for preliminary approval of the settlement.

## II.    THE SONG-BEVERLY CREDIT CARD ACT AND THE CLASS

The Song-Beverly Credit Card Act (Civil Code § 1747.08) (the "Act"), prohibits retailers from requesting or requiring as a condition to accepting the credit

---

[1] *Rubinstein v. Bed Bath & Beyond, Inc.*, 2:11-cv-02437-SVW-SS; *Oktanyan v. Bed Bath & Beyond Inc.*, 2:11-cv-02609-SVW-SS; *Bennett v. Bed Bath & Beyond, Inc.*, 2:11-cv-06137-SVW-SS; *Paxton v. Bed Bath & Beyond, Inc.*, et al., 2:11-cv-07046-SVW-SS; and *Shughrou v. Bed Bath & Beyond, Inc., et al.*, 2:11-cv-07039-SVW-SS. In two related cases, *Bourbiel v. Bed Bath & Beyond, Inc.*, 2:11-cv-06977-SVW-SS and *Heon v. Bed Bath & Beyond Inc.*, 2:11-cv-07022-SVW-SS, on January 13, 2012 and January 9, 2012, respectively, plaintiffs filed a notice of dismissal. [*Bourbiel* ECF No. 42; *Heon* ECF No. 35.]

card, and then recording personal information in connection with a credit card purchase. In the California Supreme Court case of *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524 ("*Pineda*"), the Court held that requesting a ZIP code, with nothing more could violate the Act. The Act provides for a one (1) year statute of limitations. Plaintiff alleged that in January 2011, she made two purchases from a BBB store in California wherein prior to paying with a credit card, a BBB employee asked her for her ZIP code, which ZIP code was recorded by the cashier.

Discovery has revealed that BBB only asked customers for their ZIP codes during a two-week period (January 1-14, 2011), at all of its California stores. The class size is approximately 284,904 persons, which represents those persons who were asked for and provided a five-digit number to BBB, which BBB recorded. BBB denies all allegations of wrongdoing.

## III.   A SUMMARY OF THE PROPOSED SETTLEMENT

The proposed settlement was reached after formal and informal discovery, an *ex parte* application by Plaintiff, and months of arm's-length negotiation. Plaintiff and BBB were aided in resolving the Action by two sessions with a well-respected mediator, the Honorable Dickran Tevrizian, a retired federal court judge with significant experience in the area of class action law. Both sides were represented by experienced counsel with significant class action experience. The parties also reviewed a number of recent Song-Beverly Credit Card Act settlements approved by other California state and federal courts, all of which occurred after the *Pineda* opinion. Therefore, the parties reached the following settlement:[2]

A.   The Settlement Class is conditionally certified, for settlement purposes only, as follows: "All persons who, between January 1, 2011 and January 14, 2011, used a credit card to make a purchase at a Bed Bath & Beyond store located in

---

[2] A true and correct copy of the Settlement Agreement is attached as **Exhibit 1** to the Declaration of Edwin C. Schreiber, filed concurrently herewith.

California and whose Personal Identification Information, including, but not limited to, home ZIP code, was requested and recorded during the credit card purchase transaction."

**B.** For purposes of claims administration, the Settlement Class shall be divided into three Claimant Groups:

**1.** Claimant Group One comprises Claimants for whom BBB has a valid and complete United States postal address and the ZIP code in the postal address matches the ZIP code provided at the time of purchase;

**2.** Claimant Group Two comprises Claimants for whom BBB has a valid and complete United States postal address and the ZIP code in the postal address does not match the ZIP code provided at the time of purchase; and

**3.** Claimant Group Three comprises Claimants for whom BBB has no United States postal address.

**C.** Ms. Salmonson, subject to Court approval, will be provisionally appointed the Class Representative and her counsel, Schreiber & Schreiber, Inc. will be provisionally appointed Class Counsel.

**D.** Each Settlement Class Member who submits a complete, accurate, valid, and timely Claim Form to the Settlement Administrator, at his or her option shall be entitled to the following benefit:

**1.** Either a seven dollar ($7.00) BBB gift card ("gift card") or a BBB discount certificate for fifteen percent (15%) off any purchase up to two hundred fifty dollars ($250.00) ("discount certificate"), which would result in a maximum discount of thirty seven dollars and fifty cents ($37.50).

**2.** The gift card will be a freely transferable standard gift card with standard terms, including (i) no expiration date; (ii) no fees or charges; (iii) redeemable for merchandise only, except where required otherwise by law; and (iv) redeemable at any Bed Bath & Beyond, Buy Buy Baby, Christmas Tree Shops, or Harmon Face Values store or online at bedbathandbeyond.com or buybuybaby.com.

3

3.    The discount certificate will be freely transferable and will expire within six (6) months of issuance.  The certificate shall be subject to all standard terms and conditions including (i) it can only be used in Bed Bath & Beyond stores and not online; (ii) normal and customary product exclusions that are contained on Bed Bath & Beyond's regularly issued coupons will apply; (iii) it cannot be used in combination with other rebates or coupons for Bed Bath & Beyond products; and (iv) only originals will be accepted.

E.    With respect to claiming the benefit, the three Claimant Groups shall be required to do the following:

1.    Claimant Group One members will be deemed to have submitted a complete and valid Claim Form (*see* Exhibit A to Settlement Agreement) if the Claimant timely chooses the Class Benefit he or she prefers (*i.e.*, if the Claimant makes a choice between the gift card and the discount certificate).

2.    Claimant Group Two members will be deemed to have submitted a complete and valid Claim Form (*see* Exhibit B to Settlement Agreement) if the Claimant timely (1) provides a "proof of address" (under penalty of perjury) that the ZIP code provided at the time of purchase was the Claimant's home ZIP code and (2) chooses the Class Benefit he or she prefers (*i.e.*, if the Claimant makes a choice between the gift card and the discount certificate).

3.    Claimant Group Three members will be deemed to have submitted a complete and valid Claim Form (*see* Exhibit C to Settlement Agreement) if the Claimant timely (1) provides a "proof of purchase" showing that the Claimant purchased merchandise with a credit card at a Bed Bath & Beyond store located in California between January 1, 2011 and January 14, 2011; (2) provides a "proof of address" (under penalty of perjury) that the ZIP code provided at the time of purchase was the Claimant's home ZIP code; and (3) chooses the Class Benefit he or she prefers (*i.e.*, if the Claimant makes a choice between the gift card and the discount certificate).

4

**F.**   Class notice shall be provided (subject to Court approval) in the following manner:

**1.**   For those Settlement Class Members for whom BBB has a valid United States postal address, BBB will send written notice via United States Mail (see Exhibit D to Settlement Agreement) that will direct Settlement Class Members to the Settlement Website;

**2.**   BBB will publish notice in the California edition of USA Today twice during a 30-day period leading up to the deadlines set by the Court for Settlement Class Members to submit Claim Forms, object, or opt out (see Exhibit E to the Settlement Agreement) that will direct Settlement Class Members to the Settlement Website;

**3.**   BBB will set up a Settlement Website and post a detailed notice providing Settlement Class Members with instructions on how to submit Claim Forms, object, or opt out (see Exhibit F to the Settlement Agreement).  In addition, BBB will set up a toll-free, automated call center to respond to Settlement Class Member inquiries, including requests to receive the Detailed Notice and Claim Form in the mail.

**4.**   BBB will pay for all reasonable costs of retaining the Settlement Administrator to effectuate the proposed settlement and provide notice to the Settlement Class.

**G.**   Plaintiff shall apply to the Court for a class representative incentive award in an amount not to exceed three thousand dollars ($3,000).  BBB agrees not to oppose Plaintiff's application for such an incentive award, which is subject to Court approval.

**H.**   Plaintiff will file any papers supporting Class Counsel's request for attorneys' fees not to exceed one hundred ninety nine thousand dollars ($199,000) and costs not to exceed ten thousand dollars ($10,000).  BBB agrees not to oppose Plaintiff's application for such attorneys' fees and costs, which are subject to Court approval.

## IV.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY APPROVED

So long as a class action settlement is the product of arm's-length negotiation by experienced counsel with sufficient information to intelligently bargain, then the settlement is entitled to a presumption of fairness.  As was noted in *In re Immune Response Securities Litigation* 497 F. Supp. 2d 1166, 1169-70 (S.D. Cal. 2007):

> "Although Rule 23 (e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993). When determining whether approval of a settlement is warranted, courts consider several factors which may include, among others, some or all of the following: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement. *Torrisi*, 8 F.3d at 1375; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). . . . Finally, "the settlement may not be the product of collusion among the negotiating parties." *Mego*, 213 F.3d at 458 (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir.1992)).

As will be demonstrated, all of the factors in this case weigh strongly in favor of settlement approval.

### A.   Nature and Strength of the Case

The Act provides for a mandatory civil penalty of up to $250 for the first violation and up to $1,000 for each violation thereafter.  Courts have interpreted the

1   Act as allowing, within the discretion of the trial court a penalty of between a penny

2   and up to the maximum $1,000 penalty per violation (*TJX Companies, Inc v.*

3   *Superior Court* (2008) 163 Cal. App.4th 80, 86-87). That is, if a merchant requests

4   and records personal information, unless a defense can be proved, a penalty is

5   mandatory.

6   Plaintiff contends that BBB violated the Act because she was asked for, and

7   provided her ZIP code, which was recorded by BBB. BBB, however, has presented

8   numerous defenses to the claims made in this Act, both with respect to class

9   certification and liability. For example, BBB contends that because posted signs

10  informing consumers the ZIP code request was optional raises the question of how

11  any customer could believe that he or she was required to provide his or her ZIP

12  code as a condition of completing the credit card transaction, which potentially

13  defeats both defeating class certification and liability. In addition, BBB contended

14  there are many individual issues regarding whether the information contained in

15  each credit card customer's transaction record actually constitutes a ZIP code. For

16  example, if the customer provided BBB with a false ZIP code or a nonsense ZIP

17  code, BBB argued there can be no violation of the Song-Beverly Act, again

18  potentially defeating class certification and liability.

19  BBB also argued that even if it did violate the Act, the penalties would be

20  minimal because BBB did not sell or use the ZIP codes for direct marketing. In

21  other words, BBB did not and does not engage any third party, or use any internal

22  resources, to take the ZIP codes collected at the point of sale and tie them to a

23  particular customer name or address (*i.e.*, BBB does not "reverse append" names or

24  addresses to ZIP codes obtained at the point of sale). Rather, BBB used the

25  information to decide whether or not to "buy" ZIP code postal routes from the post

26  office for direct mailings addressed to "Our Neighbor", to decide when and where

27  to include coupons or circulars in newspapers and magazine inserts, and to

28  determine where to open new stores based on where customers shopping at a given

store are traveling from. Additionally, BBB was initially prepared to file a

7

1  summary judgment motion with respect to standing issues and was, at one point

2  prepared to file a Rule 11 sanction motion on this issue. Clearly, BBB was intent

3  on vigorously litigating this action at every stage in an effort to defend itself from

4  the claims made in the lawsuit.

5      The parties and the Courts are also left in a state of uncertainty with respect

6  to how the penalty would be set, as there is no Legislative or *stare decisis* precedent

7  as to the proper amount of the penalty. There is no jurisprudence whatsoever as to

8  what factors are to be used and how the penalty should be set. Therefore, this case

9  has a value of somewhere between $2,849.04 (one cent per class member) (an

10  amount 1/3 the size of the small claims court jurisdiction and an amount which

11  would realistically leave each class member no value at all because even the cost of

12  notice and printing and mailing checks would far subsume even multiple times this

13  amount) and $284,904,000 ($1,000 per class member). While the parties can guess

14  as to what would occur at trial, the law is wholly uncertain. Certainly, this is not

15  the most egregious conduct (for example selling the customer information to the

16  highest bidder, or multiple bidders, or recklessly exposing personal information to

17  identity theft), yet it is not the most benign either (this was not a one-time accident

18  with specific store policies not to collect this information). Without legal guidance,

19  there is simply no way to know where on the spectrum of penalties this case would

20  land, assuming a class could be certified and a finding made that BBB did, in fact,

21  violate the Act.

22      The preliminary settlement approval process is not an appropriate time to

23  engage in a mini-trial of the merits of the case. It is simply "not appropriate for the

24  court to attempt to settle these questions of law and fact: '[T]he settlement or

25  fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.

26  Neither the trial court not [the appellate court] is to reach any ultimate conclusions

27  on the contested issues of fact and law which underlie the merits of the dispute, *for

28  it is the very uncertainty of outcome in litigation and avoidance of wasteful and*

*expensive litigation that induce consensual settlement.'* [citations]" *In re Immune Response*, 497 F.Supp.2d at 1172.

California law is in accord, noting that "the merits of the underlying class claims are not a basis for upsetting the settlement of a class action; the *operative word is 'settlement.'"* (*7-Eleven Owners for Fair Franchising vs. Southland Corporation* (2000) 85 Cal. App.4th 1135, 1150 [emphasis added]). It has been noted that, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Garner v. State Farm Mutual Auto Insurance Co.* 2010 WL 1687832, *8 (N.D. Cal. Apr. 22, 2010).

**B.    The Risk and Expense of Continued Litigation**

In order to prevail, Plaintiff will have to: (1) Certify a class, something BBB is prepared to vigorously defend; (2) Prove that BBB requested and recorded ZIP codes, and did so with no defense to the Act; and (3) Convince the Court (in the wake of no existing precedent) to issue an award of sufficient size so that each class member will recover (after fees, costs and expenses) an award to make the litigation worthwhile. Then, if the recovery is of such size, defend that award before the Ninth Circuit, as substantial verdicts have been reversed on appeal, even after years of litigation at the trial court level.

Naturally, continued class action litigation and trial will engender tremendous cost on both sides, as well as consume a significant amount of the Court's time. Even if Plaintiff were to prevail at trial and on appeal, the recovery is potentially years away; settlement provides a much more immediate benefit. Clearly, it is the risk and expense of litigation that is one driving factor for settlement.

## C.   Discovery

Plaintiff conducted both formal and informal discovery, including serving written discovery upon BBB, much of which was answered.  Similarly, BBB conducted informal discovery, receiving information from the Plaintiff.  Plaintiff also filed an ex parte application to resolve discovery issues at an early stage of the case, which resolved a major loggerhead and paved the path for an exchange of information which ultimately lead to settlement talks, mediation, and ultimately, a settlement.  Plaintiff obtained information regarding the size of the class, BBB's business practices regarding request and collection of data, information regarding store policies and signage, and information relating to the use BBB made of the information.  Similarly, BBB was able to allay one of its greatest concerns, standing, as BBB only requested ZIP codes for a two week period, yet was concerned that many of the lawsuits filed were filed by plaintiffs who did not actually make a purchase during the two-week period in question.  By providing information Plaintiff was able to prove she did, in fact, make two purchases during the two-week period and was able to demonstrate that she was requested to provide and did, in fact provide her actual ZIP code to BBB employees, which was recorded.  The formal and informal exchange of discovery provided experienced counsel on both sides sufficient comfort that there was more than enough information about the nature and status of the case to enter into legitimate settlement discussions.

Furthermore, the amount of discovery taken is not a prerequisite to a class action settlement.  Courts have noted that, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties had sufficient information to make an informed decision about settlement. . . 'notwithstanding the status of discovery, plaintiffs' negotiators had a plethora of information regarding the facts of their case.'" *7-Eleven Owners*, 85 Cal.App.4th at 1150. *See also in re Corrugated Container Antitrust Litigation*, 643

F.2d 195, 211 ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.'" (emphasis omitted)). Here, more than sufficient information to make a reasonable and informed decision was readily available, meaning that there was a reasonable basis for settlement—meaning it should be approved.

**D.   Class Recovery**

Given the nature of the issues involved in this case, the recovery to each class member is fair. As is explained at length later, a $7.00 BBB gift card allows a customer to choose from more than 10,000 items at any Bed Bath & Beyond, Buy Buy Baby, Christmas Tree Shops, or Harman Face Values store (or online at bedbathandbeyond.com or buybuybaby.com) without spending a cent out of pocket. Settlement Class Members who opt for the discount certificate (which is better than the coupons BBB regularly offers to members of the general public) can save up to $37.50 on a major purchase should they so desire. Apparently since the lawsuit was instituted, BBB has stopped the practice of requesting ZIP codes in California, demonstrating an additional benefit this lawsuit has conferred on the California consuming public. Thus, this settlement provides a very real, and immediate benefit to California consumers who have already expressed and interest and willingness to purchase the products sold by BBB. Consumers can obtain this benefit without spending any money out of pocket should they so desire.

**E.   Experience of Counsel**

As is set forth in the declaration of Plaintiff's counsel, Schreiber & Schreiber, Inc. is an "AV" rated law firm, wherein both principal members graduated in the top five percent (5%) of their law school class from prestigious law schools and were both Order of the Coif. The firm has numerous published opinions to its name, including two California Supreme Court opinions and Eric A. Schreiber was also included in Super Lawyers Rising Stars list. The Schreiber firm has vast class

action experience spanning several decades, and, it should be noted that when several firms vied to be interim class counsel, the Court selected the Schreiber firm above all other firms to act as interim class counsel.  Similarly, BBB is represented by the prestigious firm of Morrison & Foerster, and its counsel also has vast experience in class action litigation.

The views of experienced counsel is entitled to significant weight ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interests of the class.'" *Dunk v. Ford Motor Company* (1996) 48 Cal. App.4th 1794, 180.1).  The recommendation of plaintiff's counsel should be given a presumption of reasonableness (*In re Omnivision Technologies, Inc.* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008).

Here, experienced counsel on both sides, negotiated for a significant time at arm's length with aid of an experienced mediator, meaning every presumption of fairness should be provided to this settlement.

**F.    Government Participation**

No governmental entity was involved in this matter, however, as is required by CAFA, the appropriate information and documentation will be provided as is required by law.  Therefore, should any governmental agency desire to become involved, it will have the opportunity to do so.

**G.    The Settlement was Reached at Arm's-Length, With the Aid of an Experienced Mediator and  is Well in Line with Other Recent Settlements Under the Act**

Under California law, a presumption of fairness exists where: (1) the settlement is reached through arm's length negotiation; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. (*Dunk v. Ford Motor Company* (1996) 48 Cal. App.4th 1794).  The benefits of settling a class action are obvious: settlement saves the litigants the

12

expense of a trial and possible appellate review of the disputed issues and reduces the burden on the judicial system.

Clearly, this matter was vigorously litigated at an early stage, with potential summary judgment and even Rule 11 motions discussed. Plaintiff had to file an *ex parte* application to resolve potential discovery issues. There is no question the settlement was the product of arm's-length negotiation. After formal and informal discovery was exchanged, the parties (along with counsel in two other cases) attended a mediation on August 10, 2011 with the Honorable Dickran Tevrizian, himself a former federal district court judge, and who is very experienced both from the bench, and as a mediator, with class actions. While the August 2011 mediation did not result in a settlement, it lead to further and continuing negotiations, as well as continued exchanges of information and discovery. In fact, because Plaintiff's counsel and counsel for plaintiffs in the other matters parted ways shortly after the August mediation, BBB was, in fact separately negotiating with two different groups.[3] Negotiations continued from August 2011 all the way through February 2012 before a deal was able to be negotiated. Thus, without question, the bargaining was at all times arm's-length conducted by counsel each looking out for the best interests, and best deal for its side. Finally, the parties were able to reach a compromise all sides could agree upon.

Equally as important is the fact that several other litigations based upon the same Act (in what is known as the post-*Pineda* era, *i.e.*, settlements occurring after the *Pineda* decision) have recently been either preliminarily or finally approved by other California state and federal courts, and this settlement is well within the range, if not significantly better for the class. While no court has apparently opined

---

[3] Even though there were multiple rounds of negotiations with counsel in several matters, the negotiations were kept completely separate, that is, the Salmonson case and its counsel had no information with respect to the other cases. Thus there was no "lowest bidder" undercutting of claims in any case, rather each group sought to separately settle their case, until such time as this Court appointed Salmonson's counsel lead counsel and stayed all other cases.

that comparing the settlement before it to other similar cases is an element of
preliminary or final approval, clearly, other approved settlements provide at least
some guidance as to what a fair settlement should be under the Act. Virtually all of
these cases that have settled provide a free (gift card type) benefit or discount
certificate at the option of the class member. The following table shows cases
Plaintiff's counsel has located that have at least been preliminarily approved, with a
summary of the benefits of the settlement:

    1.     The *Tiffany (Scherer v. Tiffany and Company* 3:11-cv-00532-H-RBB
[US District Court Southern District, California]) settlement: Class benefit either 3
three free letters of engraving ($15 value) or $10 off merchandise no minimum
purchase. $2000 class representative award, $142,000 attorney fees.

    2.     The *Tommy Bahama (Konevskya v. Tommy Bahama Group, Inc.*
BC424931 [Los Angeles Superior Court]) settlement: Class benefit either a $15
store credit or 15% off of a purchase up to $200. $2,000 class representative award
and $250,000 in attorney fees and costs.

    3.     The *Worldwide Golf Enterprises (Flores v. Worldwide Golf
Enterprises, Inc.* 37-2008- 0085406-CU-BT-CTL [San Diego County Superior
Court]) settlement: Class benefit, a $15 gift card (expires within 90 days). $7500
class representative award, $225,000 attorney fees and costs.

    4.     The *Sunglass Hut (Adjamian v. Sunglass Hut Trading, LLC* 30-2011-
00451217-CU¬BT-CXC [Orange County Superior Court) settlement: Class benefit
either a $20 merchandise certificate or $50 off a purchase of $200 or more (both
benefits have a 90-day expiration date). $2,000 class representative award,
$210,000 attorney fees and costs.

    These four cases are incredibly similar to the present case, as all are Song-
Beverly cases. Of note is the fact that all of the cases provide for either a gift card,
or a class member option for either a gift card or a discount certificate. Similarly,
the amount of the incentive award and attorney fees and costs are quite similar to

this case.  However, Plaintiff considers this settlement far superior to the other settled cases for the following reasons:

First, the gift card option in this case is freely transferable and does not expire at all, most of the other cases have a mere 90 day usage period. Even the discount certificate has a six month life giving class members a realistic and significant time to use it;

Second, While slightly less in overall value ($7.00) the gift card option is actually far superior because class members can realistically choose from a significant amount of merchandise (more than 10,000 items) at Bed Bath & Beyond, Buy Buy Baby, Christmas Tree Shops, or Harmon Face Values store or online at bedbathandbeyond.com or buybuybaby.com, while, for example, $10 at Tiffany's cannot obtain even one item of free merchandise. Likewise, it does not appear that a $20 credit can buy any pair of sunglasses at Sunglasses Hut (a retailer of generally high end expensive sunglasses), and while a $15.00 store credit might be able to buy a handful of items at either Tommy Bahama (generally a retailer of very high end clothing) or Worldwide Golf Enterprises, a consumer is highly unlikely to be able to purchase anything of significance for $15.00, meaning a consumer is likely to have to come out of pocket, even to use a $15.00 gift card (within 90 days no less). Thus the non-time restricted gift card at BBB has the very real possibility of granting those class members who want free merchandise and nothing more the legitimate option of a choice of thousands of household items all of which can be purchased for under $7.00. Of course, the class member also has the option to sell the gift card if they wish cash or to give it as a gift should they so desire.

Third, the proposed $3,000 award to Plaintiff is well within the range of $2,000 to $7,500 paid to other class representatives in similar matters; and

Finaly, the proposed attorney fee and cost award (combined maximum of $209,000) is well within the range of other settlements, $142,000 (*Tiffany*),

1   $250,000 (*Tommy Bahama*), $225,000 (*Worldwide Golf Enterprises*) and $210,000

2   (*Sunglass Hut*).

3       Therefore, this settlement is well within the range of other similar settlements

4   that have been recently either preliminarily or even finally approved by other

5   California Courts. While each case, and each settlement stands on its own merit,

6   clearly the California legal community is starting to determine that these type of

7   settlements in ZIP code violation cases are appropriate.

8   **H.   The Class Representative Incentive Award, Subject to This**
        **Court's Approval is Fair**
9

10      Incentive awards are routinely awarded by Courts to compensate the class

11  representative for "work done on behalf of the class, to make up for financial or

12  reputational risk undertaken in bringing the action, and, sometimes to recognize

13  their willingness to act as a private attorney general." (*Rodriguez v. West*

14  *Publishing Corp.* 563 F.3d 948, 958-59 (9th Cir. 2009). For example, in *Ingram v.*

15  *The Coca-Cola Company* 200 F.R.D. 685, 694 (N.D. Ga. 2001) the court awarded

16  each class representative $3,000 in recognition of services provided to the class, as

17  well as to compensate for the risk taken by the named plaintiffs.

18      In this case, Ms. Salmonson took the personal risk of acting as class

19  representative in an effort to benefit a class of almost 285,000 California

20  consumers. She was personally responsible for all costs if BBB prevailed in the

21  litigation. She could have been made to sit for depositions, and has been valuable

22  in assisting counsel with prosecuting the action. Incentive awards are justified as

23  they encourage injured persons to come forward to champion the rights of injured

24  consumers statewide. Furthermore, such award compensates the Plaintiff for

25  services provided to the class and to compensate for the personal, financial, and

26  potential reputational risk associated with acting as a class member. Clearly, the

27  amount of the payment is well within the range of incentive payments made to

28  other, similar class representatives.

I.   **An Award of $199,000 in Attorney Fees and up to $10,000 in Costs to Class Counsel is Fair, Reasonable and the Product of Arms-Length Negotiations**

Class Counsel will submit a detailed brief on the amount of attorney fees and costs prior to the final approval hearing, however, it appears that the amount sought by class counsel will come very close to lodestar.

The parties negotiated an attorney fee settlement but only after all other issues were completely resolved by Judge Tevrizian. This approach is expressly endorsed by the *Manual for Complex Litigation* ¶ 21.7 (4 ed 2004). The interests of the class were fully negotiated before the issue of attorney fees were even discussed, meaning there was no incentive or trade-off of a lower class benefit for a higher attorney fee. Naturally, by deferring all fee discussions, the full focus of negotiation centered on the class benefit with no conflict arising regarding the potential for an attorney fee. After the class benefit was agreed upon, only then did the parties negotiate the fee, wherein it would have no impact upon what the class received. Clearly, after the class benefit was negotiated, Defendant had every incentive to negotiate as low an attorney fee as possible to decrease its overall litigation costs.

While both sides negotiated in good faith with the assistance of Judge Tevrizian to reach a fair attorney fee, both sides understood there was a very real possibility that if the final amount was not agreed upon, such fee would be set by the Court. The attorney fee, like all other aspects of negotiation reflects a fair, arms-length negotiation with each side realizing that were the Court to set the fee, each side could do substantially better, or worse than hoped. The court in *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tx. 2007) noted:

> An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances. See Fed. R. Civ. P. 23(h) (providing that "[i]n an action certified as a class action, the court may award reasonable attorney fees

17

and nontaxable costs authorized by ... agreement of the parties ....""). In fact, courts have encouraged litigants to resolve fee issues by agreement, if possible. Lobatz v. U.S. W. Cellular, Inc., 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming reasonable award of fees and expenses to be paid separate from class action settlement where defendant agreed not to oppose request up to negotiated amount); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir.1998) (upholding district court's award of attorneys' fees where Court had approved attorneys' fees and costs of $5.2 million which were negotiated after final settlement was achieved); Malchman v. Davis, 761 F.2d 893, 905 n. 5 (2d Cir.1985) (recognizing "[a]n agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged"), cert. denied, 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986), abrogated on other grounds sub nom Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F.Supp. 819, 829 (D.Mass.1987) (concluding that "[w]hether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves").

Throughout this entire litigation, counsel has expended a significant amount of time and resources, including significant cost money to prosecute this action with no guarantee of payment or even reimbursement barring settlement or judgment.  The opponent was a public company represented by a well-respected law firm.  Nevertheless, class counsel continued to prosecute this action based upon the importance of consumer protection class actions such as the present case. Given the significant class action experience, class counsel prosecuted this case with the vigor and zealous advocacy necessary to prosecute such claim, meaning

18

that time, which could have been used on other matters was spent in this action. Furthermore, class action litigation entails significant risk, as a loss at any stage of the case, even appeal results in a significant amount of unreimbursed time and expense—however, such is the nature of class action litigation.

Here, the parties were able to reach an arm's-length deal on a fair fee for this case, which provides compensation for work performed and work to be performed by class counsel in recovering a significant benefit for almost 285,000 California consumers, which would not have occurred but for the efforts of class counsel. Furthermore, the attorney fee award does not, in any way diminish the consideration each class member receives. Thus, the attorney fee and cost award, which was the subject of arms-length bargaining is fair and should also be approved. Class Counsel, as is its obligation will provide a much more detailed declaration of time and expense at the final approval hearing when one is scheduled.

## V.   THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED, THE FORM AND METHOD OF CLASS NOTICE SHOULD BE APPROVED AND A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The settlement class should be conditionally certified (for purposes of the settlement only) pursuant to <u>F.R.C.P.</u> Rules 23(a) and (b)(3).

### A.   The Requirements of Rule 23(a) are Met

*Numerosity:* Rule 23(a)(1) requires numerosity, that is where joinder of all members would be impractical. The Settlement class is comprised of 284,904 class members, which unquestionably qualifies as a class (*see e.g., Zhu v. Fujitsu Group 401(K) Plan*, 2004 WL 3252573 at *5 (N.D. Cal. March 3, 2004) [class of approximately 139 members sufficient for numerosity]). Without question the class here is of a sufficient size for the numerosity requirement.

*Commonality:* Rule 23(a)(2) is satisfied because Plaintiff's claims are based upon a common practice—all class members were asked to provide their ZIP code

in the course of a credit card transaction and the five digits provided were recorded by BBB.  This is all that is necessary to state a claim under the Act. A common course of conduct towards the class is all that is required, each transaction need not be identical (*Hanlon v. Chrysler Corp.* 150 F.3f 1011, 1019 (9h Cir. 1998) "The commonality prong is to be construed permissively, and may be satisfied by a common course of conduct.").  Here, there is no doubt Plaintiff, like other class members have claims of similar conduct, they were all asked to provide their ZIP codes to BBB employees in the course of a credit card transaction and the five digits provided were recorded by a BBB employee, thus all class members have common claims.

*Typicality:* Much like commonality, typicality is also present in this case, as is required by Rule 23(a)(3).  Here, Plaintiff simply need show her claims are typical of members of the class.  Plaintiff asserts the same claim as all other class members, that her ZIP code was requested and recorded prior to a credit card purchase.  Thus, typicality is present (see *McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598, 610 (S.D. Cal. 2007 "The same sales pitch, strategy and scheme that injured the named plaintiff likewise injured the absent class members.").  Here, Plaintiff's claim is typical, if not virtually identical to the claims made by all class members.

*Adequacy:* Rule 23(a)(4) requires that the named plaintiff and her counsel adequately represent the interests of the class.  This rule is deemed satisfied when: (1) Class counsel is qualified and competent to vigorously represent the class and pursue its claims and (2) The interests of the class representative is not antagonistic to the class' interests (*see e.g. Stanton v. Boeing* 327 F.3d 938, 957 (9th Cir. 2003)).

As is detailed in the declaration of Edwin C. Schreiber, both he and Eric A. Schreiber have vast class action experience as well as excellent credentials.  Class Counsel has handled dozens of class actions and even has experience defending class actions as well, meaning Class Counsel has experience from both perspectives of class action litigation.  Schreiber & Schreiber, Inc. has been appointed class

1   counsel in numerous class actions, many of which have settled, and the firm has the

2   experience and knowledge to act as counsel to protect the interests of the class.

3   Additionally, neither Class Counsel nor the Class Representative, Ms.

4   Salmonson has any interests antagonistic to the class. Plaintiff, like all other

5   members of the class present identical claims, and Plaintiff has no interests in

6   conflict with other class members.

7   **B.     The Requirements of Rule 23(b)(3) Are Met**

8   Rule 23(b)(3) provides that a Court may certify a class if: (1) Questions of

9   law or fact common to members of the class predominate over questions affecting

10   only individual members and (2) A class action is a superior to other methods of

11   fair and efficient adjudication of such claims.

12   *Common Questions of Fact and Law*

13   This case is the classic class action scenario, numerous individuals injured in

14   a small amount. Here, common questions of both fact and law predominate this

15   case. The business practice with respect to all class members was common—did

16   BBB request/require and record ZIP codes in connection with credit purchases?

17   The factual and legal analysis for all claims is in essence, the same. While there

18   may be minor variations in individual transactions, the core legal and factual issues

19   are the same for all class members. BBB's potential liability is not dependent upon

20   different factual and legal bases for each class member, rather each class member's

21   experience is virtually identical and based upon the same policy. In general courts

22   have noted that "Common questions predominate where a complaint alleges a

23   common course of conduct that affects class members in the same manner." (*Jones

24   v. E\*Trade Mortgage Corp.* 2006 WL 581257 \*2 (S.D. Cal. Feb. 17, 2006). The

25   commonality requirement is met in this case as the conduct and common policy,

26   even the defenses to the lawsuit are common to all class members. Common issues

27   of both fact and law predominate this case.

28   *Superiority*

There are in essence two alternatives to this case, class action status, where the matter is resolved at once, or, should every class member be so inclined to litigate, almost 285,000 individual actions. Class action status is superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter- Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996). Under Rule 23(b)(3) a Court should focus on litigation efficiency and judicial economy. Because the claims made, and factual and legal bases are common to all class members, it is far superior to litigate (and settle) all claims in one judicial proceeding, rather than a flood of individual lawsuits over the same conduct (*see In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation* 55 f.3d 768, 784 (3rd Cir. 1995). Cases such as this one, with a large class of people who have all suffered a relatively small injury are ideally suited for class action status, as most injured consumers would not have the incentive to engage in the time and effort necessary to litigate over a relatively small amount of money, yet, by aggregating into a class, each class member's rights are protected. In a case such as this one, a class action is without question a superior method of litigation.

### Appointment of Class Counsel

This Court has already appointed Schreiber & Schreiber, Inc., interim class counsel pursuant to its January 9, 2012 order. Rule 23 (g)(1) requires the Court to appoint counsel to represent the interests of the class. Because this Court has already represented the Schreiber firm class counsel, and because under its stewardship, a settlement has been reached, the Schreiber firm should continue to act as class counsel to complete the settlement process.

### C.   The Court Should Approve the Form and Method of Service of Class Notice

Upon preliminary approval of a settlement, the class must be informed of its rights to have an opportunity to consider the terms of the settlement. In general "the contents of a settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to

22

them in connection with [the] proceedings.'" (*Grunin v. International House of Pancakes* 513 F.2d 114, 122 (8th Cir. 1975). The proposed Mail Notice, Publication Notice, and Detailed Notice meet these standards (*see* Exhibits A-C to the Settlement Agreement), which collectively provide:

1.   A summary of the litigation and claims alleged in the lawsuit;

2.   An explanation of all the terms of the settlement, including the benefits each class member can elect to receive, as well as a method of claiming benefits;

3.   An explanation as to what information class members must provide in order to be eligible to receive the class benefit;

4.   The rights class members are giving up via settlement;

5.   An explanation of class members' rights to object or opt out and deadlines to do so;

6.   An explanation that the failure to opt out will be binding upon class members, and the failure to opt out will result in a release of all claims;

7.   An explanation that those class members who do not opt out will be represented by class counsel at no fee to them; and

8.   Ways of obtaining more information from class counsel or other sources.

Rule 23(e) gives the Court "virtually complete" discretion as to the manner of serving notice of settlement (*Colesberry v. Ruiz Food Products, Inc.* 2006 WL 1875444 *7 (E.D. Cal. June 30, 2006). To that end "There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable by reasonable effort.'" *Eisen v. Carlisle & Jacqueline* 417 U.S. 156, 175-76 (1974). The parties here have determined that the best practical notice designed to reach the largest number of persons is: (1) A postcard notice mailed to all Settlement Class Members for whom BBB has a complete valid United States postal address; (2) An Internet website with full and complete information

regarding the lawsuit and the settlement; and (3) Publication in an effort to provide notice where no other notice is possible or practical due to the lack of an address. Therefore the parties respectfully request that this method of notice be approved by the Court, as the best and most reasonably practical notice possible.

**D.     The Court Should Set Deadlines for Notice, Submission of Requests for Exclusion, Claim Forms, Objections, and Notices of Intention to Appear and Schedule a Final Approval Hearing**

Plaintiff requests the Court set the following deadlines, which are proposed following meet and confer with BBB:

1.     Deadline to provide Notice to the Settlement Class: Within 45 days of the date of the Court's Order granting preliminary approval.

2.     Deadline for Plaintiff to file papers supporting Plaintiff's request for attorneys' fees and costs and a class representative incentive award:  Within 45 days of the date of the Court's Order granting preliminary approval.

3.     Deadline for Settlement Class Members to submit opt out, object, or submit Claim Forms, if they so elect:  Within 105 days of the date of the Court's Order granting preliminary approval.

4.     Deadline to file responses to any objections submitted by Settlement Class Members: Within 135 days of the date of the Court's Order granting preliminary approval.

5.     Deadline to file Motion for Final Approval of the Settlement Agreement and any other papers supporting Final Approval: Within 135 days of the date of the Court's Order granting preliminary approval.

6.     A Fairness Hearing at the Court's earliest convenience following the deadline to file any objections submitted by Settlement Class Members and the Motion for Final Approval of the Settlement Agreement.

## VI.     CONCLUSION

The settlement is fair, reasonable, and adequate. Therefore Plaintiff hereby respectfully requests that the Court issue an Order:

1.     Preliminarily approve this Agreement as being fair, reasonable, and adequate;

2.     Provisionally certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

3.     Appoint plaintiff Barbara Salmonson as Class Representative for settlement purposes only;

4.     Appoint the law firm of Schreiber & Schreiber, Inc. as Class Counsel for settlement purposes only;

5.     Preliminarily approve the form, manner, and content of the Mail Notice, Publication Notice, Detailed Notice, and Claim Forms described in Sections 3.2 and 3.4 of the Settlement Agreement, and attached as Exhibits A-F to the Settlement Agreement;

6.     Set deadlines to provide Notice, submit Claim Forms, object, and opt out;

7.     Set the date and time for the Fairness Hearing; and

8.     Stay all proceedings in the Action and any related actions against BBB until Final Approval.

Respectfully submitted,

DATED: April 6, 2012               **SCHREIBER & SCHREIBER, INC.**

*/s/ Edwin C. Schreiber*
EDWIN C. SCHREIBER, Attorneys for PLAINTIFF BARBARA SALMONSON individually, and on behalf of a class of persons similarly situated

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF Notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure and Local Rule 5–3.3 on April 6, 2012.

/s/ Edwin C. Schreiber

Edwin C. Schreiber

MOTION FOR PRELIMINARY APPROVAL